**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2271

_____

EDWIN ANTHONY RAMOS-RAMIREZ,
                                                        Appellant
v.

BERWICK BOROUGH; KENNETH STRISH; REAGAN RAFFERTY; RANDY
GAUGER

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-17-cv-01442)
District Judge: Hon. Matthew W. Brann

_____

Argued on January 21, 2020
_____

Before: AMBRO, MATEY, and FUENTES, *Circuit Judges*.

(Opinion filed:  August 7, 2020)

Curt M. Parkins                    (ARGUED)
Matthew T. Comerford
Comerford Law
204 Wyoming Avenue
Scranton, PA 18503


                                   Counsel for Appellant


David J. MacMain                   (ARGUED)

Samantha Ryan
MacMain Connell & Leinhauser
433 West Market Street
Suite 200
West Chester, PA 19382

Counsel for Appellees

_____

OPINION[*]

_____

FUENTES, *Circuit Judge*.

While responding to a domestic dispute call, Police Officer Reagan Rafferty shot Appellant Edwin Anthony Ramos-Ramirez. Following the incident, Ramos-Ramirez pled guilty to simple assault with a deadly weapon. Ramos-Ramirez then filed the present lawsuit alleging that he was subjected to constitutionally excessive force. The District Court granted summary judgment in favor of the defendants, holding that Appellant's excessive force claim was barred by his guilty plea to simple assault under *Heck v. Humphrey*.[1] We conclude that the District Court erred in its application of *Heck*. Therefore, we will vacate the District Court's judgment and remand the case for further proceedings.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
[1] 512 U.S. 477, 486-87 (1994).

I.

This case arose out of an August 15, 2015 domestic dispute in Berwick Borough, at the home of Appellant's girlfriend, Brittany Cope. After an argument between Appellant and Cope, Appellant locked Cope out of the home. In response, Cope called her ex-boyfriend, Alfredo Melendez, to come over and "kick [Appellant] out of [her] house."[2] Appellant asserts that when Melendez arrived he tried to enter the house through a window and, although Melendez did not succeed in entering the house, he managed to hit Appellant through the window with a large stick. Appellant then grabbed a knife from the kitchen and, according to Cope, tried to stab Melendez with the knife through the open window. Over the course of this encounter, both Cope and Appellant called 911.

At around 11p.m., Officer Rafferty, Chief Kenneth Strish and Officer Randy Gauger responded to two calls requesting assistance at Cope's address: one regarding a suspicious person and the other related to a domestic dispute involving a man armed with a knife. Officer Rafferty was the first to arrive on the scene. He testified that upon arrival, he saw Melendez on the porch of the residence holding a stick. After Officer Rafferty exited his car, he saw Appellant come out onto the porch of the house, holding a knife. Rafferty remained on the sidewalk separated from Appellant and Melendez by a small retaining wall. At this point, the testimony diverges.

[2] Appx126-27.

Appellant claims that he walked onto the porch, heard someone yelling to drop the knife, and was almost immediately shot.[3]  He claims that he was shot while standing on the porch, and that he was not making any threatening or aggressive movements or gestures toward Melendez.  Appellant further testified that Melendez backed away across the yard when Appellant emerged from the house and was approximately 20 feet away from Appellant at the time Officer Rafferty fired his weapon.

Certain aspects of Appellant's testimony were corroborated in a deposition by Cope.  Her deposition testimony, however, conflicts with the signed statement that she provided to police on the night of the incident.  In her deposition, Cope states that Appellant was not chasing Melendez but "just came off of the porch" when the "cops shot him."[4]  However, in the statement provided to the police officers on the night of the incident, Cope said "Anthony opened the door and ran after [A]lfredo with the knife.  As Anthony was running the police office[r] said twice to put the knife down [a]nd he did not.  The police . . . shot once at Anthony in his shoulder."[5]  When asked about the inconsistency between her statement to police and her deposition testimony, Cope said "I assumed that [Ramos-Ramirez]

---

[3]Appellant states that the police did not identify themselves upon arrival to the scene and that he did not know that police were present.  Cope corroborates this testimony saying "nobody knew it was the police when they came until after he shot him." Appx138.  Officer Rafferty also testified that he turned off his lights and sirens about a block before arriving.

[4] Appx139.

[5] SAppx62-63.

was going towards [Melendez] but I don't know where he was going because the cop shot him as soon as he came off the porch."[6]

In contrast to Appellant and Cope's testimony, police officers on the scene and Melendez all state that Appellant was actively chasing Melendez with a knife at the time he was shot. In his interview with police officers after the incident, Melendez stated that he heard the police yell "drop it, drop the knife, drop the weapons" and that Appellant was within four feet of Melendez when he was shot.[7] Similarly, Officer Rafferty testified that he observed the Appellant exit the house with a knife and Melendez with a wooden stick. He stated that he ordered both men to drop their weapons. Melendez complied but Appellant did not drop his knife. Officer Rafferty stated that he witnessed Appellant chasing Melendez with the knife. Officer Rafferty then claims that he fired his weapon when Appellant was within a few feet of Melendez. He asserts that he believed Appellant was going to stab Melendez. Additionally, Chief Strish testified that as he was pulling up and putting his car in park, he witnessed Appellant chasing Melendez with the knife raised above his head.

On January 10, 2017, Appellant pled guilty to simple assault with a deadly weapon. During the plea colloquy in state court, the court stated "[t]he elements of this kind of simple assault is that you attempted to cause bodily injury to another person, and in this particular case with a deadly weapon, specifically a

---

[6] Appx139-40.
[7] SAppx20-21.

knife."[8]  Next, the facts of the case were read: "It is alleged that on or about the 15th day of August, 2015, in the Borough of Berwick, the Defendant did attempt to cause bodily injury to the victim Alfredo Melendez using a deadly weapon, namely a knife, by chasing him with said knife."[9]  Then, the court asked Appellant if those facts are true, to which he replied "Yes, your honor."[10]  Based on these facts, the court accepted Appellant's guilty plea.

At sentencing, the facts of Appellant's plea were reiterated and Appellant's defense counsel stated, "Mr. Ramos understands that he had a knife and it appears like he was going into[sic] Mr. Melendez's direction."[11]

To commence the present action, Appellant filed a Complaint alleging *Monell* claims against Appellees Berwick Borough and Chief Strish, an excessive force claim under 42 U.S.C. § 1983 against Officer Rafferty, a civil rights conspiracy claim against all Appellees, and supplemental state claims for various state torts against Officer Rafferty.[12]  Ultimately, the District Court granted Appellees' Motion for Summary Judgment, holding that Appellant's § 1983 excessive force claim was barred by *Heck v. Humphrey*.[13]

This appeal followed.

---

[8] Appx444.
[9] *Id.*
[10] *Id.*
[11] SAppx68.
[12] Appx017.
[13] 512 U.S. 477 (1994).

II.[14]

Appellant argues that the District Court erred in concluding that his excessive force claim was barred by *Heck v. Humphrey*.[15]  In *Heck*, the Supreme Court held that that a plaintiff may not recover damages under § 1983 if doing so would imply the invalidity of a prior conviction, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[16]  For *Heck* to apply "it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory."[17]  Other courts of appeals have generally held that the mere fact of a conviction for assault or similar conduct does not automatically preclude recovery on an excessive force claim brought under § 1983, arising out of the same incident.[18]

Similarly, in *Nelson v. Jashurek*, this Court determined that convictions for resisting arrest do not necessarily invalidate § 1983 excessive force claims stating, "it is possible for a finding that [the defendant] was resisting arrest to coexist with

---

[14] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  The Court reviews a district court's grant of summary judgment *de novo*. *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

[15] 512 U.S. 477, 486-87 (1994).

[16] *Id.* at 487.

[17] *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007).

[18] *See*, *e.g., Dyer,* 488 F.3d at 883; *McCann v. Neilsen*, 466 F.3d 619, 620 (7th Cir. 2006); *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006); *Ballard v. Burton*, 444 F.3d 391, 400-01 (5th Cir. 2006); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam).

a finding that the police used excessive force to subdue him.[19]  In keeping with

*Nelson*, we conclude that simple assault with a deadly weapon under Pennsylvania

law is not necessarily inconsistent with an excessive force claim. It is possible that

an individual could attempt to cause bodily injury to a third party <u>and</u> that a police

officer could use excessive force in their attempt to intervene.[20]

However, even where a particular type of conviction is not necessarily

inconsistent with a § 1983 suit, courts look to the underlying facts pled to assess

whether a claim is barred by *Heck*.[21]  The First Circuit discussed this factual

approach in *O'Brien v. Town of Bellingham*, stating "[a] plaintiff's excessive force

claim and his conviction 'may be so interrelated factually as to bar the § 1983

claim.'"[22]  In such circumstances, "to determine *Heck*'s applicability, a court must

. . . [ask] whether the plaintiff could prevail only by 'negat[ing] an element of the

offense of which he [was] convicted.'"[23]

---

[19] 109 F.3d 142, 146 (3d Cir. 1997) (internal quotations omitted) (holding that a reasonable juror could find that the arrestee resisted arrest, but was still subjected to excessive force).

[20] Under Pennsylvania law, simple assault occurs where an individual "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1).  In contrast, excessive force occurs where an officer uses unreasonable or excessive force to bring an arrestee into custody. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[21] *McCann*, 466 F.3d at 621-22.

[22] 943 F.3d 514, 529 (1st Cir. 2019) (citing *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006)).

[23] *Id.* (last two alterations in original) (quoting *Thore*, 466 F.3d at 180).

Appellant pled guilty to simple assault asserting that he attempted to cause bodily injury to Melendez "by chasing him with [a] knife."[24] Now, in pursuit of a civil judgment against Officer Rafferty, Appellant makes two arguments. First, Appellant argues that Officer Rafferty used excessive force because Appellant was not chasing Melendez. Second, Appellant argues that even if he was chasing Melendez, Officer Rafferty's force was excessive because Appellant was too far away from Melendez to stab him and, thus, was not an immediate threat. Although Appellant's first argument would negate an element of his simple assault conviction and is barred by *Heck*, Appellant's second argument does not imply the invalidity of his conviction. Therefore, to the extent that Appellant argues that he was simply too far away from Melendez to pose an immediate threat, Appellant's excessive force claim is not barred by *Heck*.

### III.

For the foregoing reasons, we will vacate the District Court's judgment to the extent that it granted Appellees summary judgment under *Heck v. Humphrey* and will remand the case to the District Court for further proceedings consistent with this opinion.

---

[24] Appx444.